IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| EDWARD V. GIANNASCA, II, | * |
|     *Plaintiff*, | * |
| | * |
| v. | * |
| | * |
| BANK OF AMERICA, N.A. | * |
| PETER KAFOUROS, | * |
| RUTH DEREWYANKO, | *    Civil No. ELH-17-2110 |
| WILMINGTON TRUST, NATIONAL | * |
|  ASSOCIATION, | * |
| V MORTGAGE REO 3, LLC, | * |
| SHELLPOINT MORTGAGE SERVICING, | * |
| RESIDENTIAL CREDIT SOLUTIONS, | * |
| CARRINGTON MORTGAGE | * |
|  SERVICES, LLC, | * |
| STERN & EISENBERG MID-ATLANTIC, PC, | * |
| PAUL J. MORAN, ESQ., | * |
| J.P. MORGAN MORTGAGE ACQUISITIONS | * |
|  CORP., | * |
| and | * |
| JOHN DOES 1-4 | * |
|     *Defendants.* | * |

**********

**MEMORANDUM OPINION**

Plaintiff Edward V. Giannasca, II, who is self-represented, filed suit against a host of defendants, alleging fraud in connection with a construction loan and a mortgage. ECF 2 ("Complaint").[1] In an amended complaint (ECF 24-1, "Amended Complaint"), he alleged "financial fraud" and "mortgage fraud" related to a first mortgage of $1.5 million with respect to his family farm in Street, Maryland. ECF 24-1 at 5. Several exhibits are appended to the suit.

---

[1] Suit was filed in the Circuit Court for Harford County and removed to this Court by defendants Bank of America, N.A.; Peter Kafouros; and Ruth Derewyanko. *See* ECF 1. The case was originally assigned to Judge J. Frederick Motz. It was reassigned to me on February 12, 2018. *See* Docket.

*See* ECF 24-2 to 24-8.

Giannasca and New Penn Financial, LLC d/b/a/ Shellpoint Mortgage Servicing ("Shellpoint"); V Mortgage REO 3, LLC ("V Mortgage); and Wilmington Trust, National Association ("Wilmington Trust"), in its capacity as a trustee for VM Trust Series 3, filed a "Joint Stipulation Of Dismissal With Prejudice" on March 6, 2018. ECF 33. On March 22, 2018, I granted the "Joint Stipulation." ECF 37.[2]

Plaintiff has not set forth any allegations or claims against the Doe defendants. Accordingly, I shall dismiss them from this case. *See Pair v. Alexander*, GLR-16-1492, 2018 WL 1583472, at*1 n.2 (Apr. 2, 2018) (dismissing claims against Doe defendants on the ground the plaintiff "d[id] not raise specific allegations against the John Doe defendants").

Carrington Mortgage Services, LLC ("Carrington") was named as a defendant in the original Complaint. In the Amended Complaint, plaintiff added defendant J.P. Morgan Mortgage Acquisitions Corp. ("J.P. Morgan"). *See* ECF 24; ECF 24-1. According to the Docket, neither party was served. *See* Docket.

"In all cases removed from any State court to any district court . . . in which any . . . of the defendants has not been served with process . . . prior to removal, . . . such process or service may be completed or new process issued in the same manner as in cases originally filed in such district

---

[2] On November 16, 2018, Giannasca filed a "Motion To Rescind Settlement on Grounds of Fraud and Ill Practice" (ECF 46), supported by a memorandum of law (ECF 46-1) and an exhibit. ECF 46-2. Alleging fraud and misconduct, Giannasca seeks rescission of a "purported settlement" with Shellpoint, V Mortgage, and Wilmington Trust. ECF 46-1 at 1. Plaintiff did not file a copy of the settlement. Instead, he provided an order of the Circuit Court for Harford County, dated December 7, 2018, in *Wittstadt v. Giannasca*, No. 12C12003437. ECF 46-2 at 10-15. Granting the joint motion of Giannasca, V Mortgage and Wilmington Trust, the order rescinded a foreclosure sale of Gianassca's property and set aside a substitute trustee deed. ECF 46-2 at 8-9. That Order does not reflect that plaintiff released or settled any claims. ECF 46-2 at 10-15.

court." 28 U.S.C. § 1448. Fed. R. Civ. P. 4(m) requires a plaintiff to serve a defendant "within 90 days after the complaint is filed." If any defendant is not served within that time, "the court . . . must dismiss the action without prejudice against that defendant or order that service be made within a specified time." *Id.*

Pursuant to 28 U.S.C. § 1448 and Fed. R. Civ. P. 4(m), plaintiff was required to serve Carrington by October 24, 2017, and to serve J.P. Morgan by December 4, 2017. Because plaintiff has not yet served these defendants, I shall dismiss the claims against them, without prejudice.

Defendants Bank of America, N.A. ("Bank of America" or "BOA"), Ruth Derewyanko, and Peter Kafouros have filed a joint motion to dismiss (ECF 31), supported by a memorandum of law (ECF 31-1) (collectively, "BOA Motion") and exhibits. *See* ECF 31-2 through ECF 31-6. Additionally, defendant Residential Credit Solutions, Inc. ("Residential") filed a motion to dismiss (ECF 34), along with a memorandum of law (ECF 34-1) (collectively, "Residential Motion") and an exhibit. *See* ECF 34-2. And, defendants Paul J. Moran, Esq. and Stern & Eisenberg Mid-Atlantic, PC ("Stern & Eisenberg") filed a joint motion to dismiss (ECF 35), along with a memorandum of law (ECF 35-1) (collectively, "Moran Motion"). Plaintiff opposes all of the motions. ECF 38; ECF 39; ECF 40 (collectively "Opposition"). Defendants have replied. ECF 41 ("BOA Reply"); ECF 42 ("Moran Reply"); ECF 43 ("Residential Reply").

No hearing is necessary to resolve the motions. *See* Local Rule 105.6. For the reasons set forth below, I shall grant defendants' motions.

## I. Factual Background[3]

This dispute concerns alleged fraud with regard to a construction loan and mortgage on

---

[3] Because this case is at the motion to dismiss stage, I shall assume the truth of the facts alleged in Giannasca's Amended Complaint.

Giannasca's family farm. In 2006, Giannasca applied to Bank of America for a $2 million construction loan and mortgage on a farm owned at the time by the Giannasca Family Farm, LLC ("GFF"). ECF 24-1 at 10.[4] Giannasca intended to use the proceeds of the construction loan to satisfy a prior mortgage and to fund a construction project on the farm. *Id.* During the loan application process, he was assisted by Derewyanko, a BOA account executive. *Id.* After plaintiff submitted his loan application, he received Bank of America's $2 million loan documents, including a funding date and a first payment due date. *Id.* at 11. Derewyanko advised Giannasca to accelerate the construction renovations to ensure a $3 million BOA appraisal prior to funding the loan. *Id.* Giannasca did so, and the property was appraised at $3 million. *Id.*

In February 2007, Derewyanko advised Giannasca that the loan would be reduced to $1.5 million, due to "sweeping system-wide changes in [Bank of America's] loan products." *Id.* at 12. To make up for the shortfall, she suggested Giannasca increase his home equity line of credit. *Id.* She also informed Giannasca that the loan could not be made to GFF because it was a limited liability company, and that Giannasca would have to transfer the farm to himself to receive the loan. *Id.* Accordingly, Giannasca transferred the farm from GFF to himself, and the loan ultimately closed for $1.5 million on February 13, 2007. *Id.* at 6. However, BOA never approved an increase in Giannasca's home equity line of credit. As a result, a $500,000 financing shortfall remained for his construction project. *Id.*

Several liens were lodged against the farm, and Giannasca was sued by contractors engaged in the construction project. *Id.* at 13. Thus, Giannasca contends that his credit was ruined because BOA failed to lend the additional $500,000. *Id.* at 13-14.

---

[4] Citations to the Amended Complaint reference page numbers instead of paragraphs because plaintiff did not use consecutive paragraph numbers in his Amended Complaint.

The right to service the construction loan was subsequently released to other entities, including Carrington, Residential, and Shellpoint. *Id.* at 14. Giannasca ultimately defaulted on the loan and Shellpoint, through its attorneys, Moran and Stern & Eisenberg, initiated foreclosure proceedings. *Id.* at 15.

In addition, Giannasca references a "McCrary Action," alleging that the judgments in that action have prohibited him from refinancing the mortgage on his home and have contributed to his financial ruin. ECF 24-1 at 14-15. However, he fails to explain the nature of the "McCrary Action."

Giannasca also alleges that he suffered damages from the conduct of BOA and Kafouros, including, *id.* at 17:

> (i) allowing the opening of the Crescent City bank account with improper documentation . . . , (ii) by allowing [Stuart C.] Fisher[5] to deposit a check for $5,000,000 dollars into a BOA account when the check was made payable to a non-existent corporation, (iii) by allowing Fisher to negotiate (deposit) the $5,000,000 check into an account when he was not a signatory or authorized user of that account, and (iv) allowing Fisher to make withdrawals from an account without any authority whatsoever to do so, (v) by allowing Fisher to deposit monies into personal accounts without the account owner[']s knowledge and control.

Presumably, the "Crescent City bank account" is related to Crescent City, LLC ("Crescent City"), in which plaintiff claims to hold a 50% interest. *See id.* at 20. Plaintiff asserts that Crescent City entered into a $5,700,000 settlement agreement with BOA in 2011 ("Crescent City settlement"). *Id.* Additionally, "Fisher" appears to have connections to Crescent City and Giannasca. *See id.* at 21. According to an unsigned affidavit of secured creditors of plaintiff, attached to the Complaint (ECF 2-2 at 21-32),[6] Stuart C. Fisher "was personally responsible for

---

[5] Plaintiff does not fully explain Fisher's role in these matters. *See infra.*

[6] The affidavit was an exhibit to a motion filed in a suit before the Circuit Court for Harford County. *See* ECF 2-2 at 21.

soliciting and delivering Bank of America, Palm Beach to the Giannasca Family's Farm in Harford County, Maryland." ECF 2-2 at 22.

Plaintiff avers that the Crescent City settlement resolved the case of *Crescent City Estates, LLC v. Bank of America, N.A.*, CCB-08-3458 (ECF 24-1 at 20-21). On December 24, 2008, BOA removed that case to this Court from the Circuit Court for Baltimore City. *See id.* ECF 1.[7] In that litigation, Crescent City alleged that BOA converted $11,000,000 by allowing Fisher to open a BOA account in Crescent City's name without authorization, and then depositing several checks payable to Crescent City into that account. *See* CCB-08-3458, ECF 2. The parties filed a stipulation of dismissal on June 1, 2011. *See* CCB-08-3458, ECF 105. The terms of the settlement agreement are not publicly available. *See* CCB-08-3458.

As noted, plaintiff asserts that he owns a 50% interest in Crescent City, LLC. ECF 24-1 at 20. But, he complains that he was not a party to the Crescent City settlement agreement, and only recently became aware of it. ECF 1 at 13-14. According to plaintiff, the Crescent City settlement agreement is central to his claim of conspiracy and collusion (Count Four) against BOA.

In May 2016, Giannasca and the Giannasca Family Farm, LLC filed a "Fraud Complaint" in the Circuit Court for Harford County against BOA, Kafouros, Derewyanko, Shellpoint, Residential, Carrington, Stern & Eisenberg, Gregory Mullen, Esq., and several Doe defendants.

---

[7] A "court may properly take judicial notice of 'matters of public record' and other information that, under Fed. R. Evid. 201, constitute 'adjudicative facts.'" *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 466 (4th Cir. 2011), *cert. denied*, 565 U.S. 825 (2011); *Philips v. Pitt Cty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Moreover, it is well settled that a district court may "properly take judicial notice of its own records." *Anderson v. Fed. Deposit Ins. Corp.*, 918 F.2d 1139, 1141 n.1 (4th Cir. 1990). Pursuant to Fed. R. Evid. 201, a court may take judicial notice of adjudicative facts if they are "not subject to reasonable dispute," in that they are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

They alleged fraud in the inducement; breach of contract; negligence; negligent training and supervision; breach of common law duty of inquiry; breach of duty to disclose; tortious interference; flipping a troubled loan; lender fraud and misrepresentation; conspiracy; and collusion. The case was removed to this court in June 2016. *See Giannasca v. Bank of America, N.A. et. al.*, JFM-16-2002, ECF 2. Judge Motz dismissed the case in January 2017, upon defendants' motions for failure to state a claim. *Id.*, ECF 42. Giannasca then filed the case sub judice in the Circuit Court for Harford County (ECF 2), and in July 2017 the case was again removed to this Court and assigned initially to Judge Motz. ECF 1.[8]

On September 5, 2017, plaintiff filed an amended complaint, without leave of Court or consent of the parties. ECF 24 ("Amended Complaint"). All defendants filed motions to strike the Amended Complaint. *See* ECF 26 (BOA, Derewyanko, and Kafouros); ECF 28 (Residential); ECF 29 (Moran; Shellpoint, Stern & Eisenberg, V Mortgage REO 3, and Wilmington Trust). The Court denied the motions to strike. ECF 30.

Giannasca's Amended Complaint contains five counts: fraud in the inducement (Count One); "flipping" the "struggling loan" (Count Two); lender fraud and misrepresentation (Count Three); conspiracy and collusion (Count Four); and punitive damages (Count Five).

Additional facts are included in the Discussion.

## II. Standard of Review

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom. McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of*

---

[8] The case was initially administratively closed due to bankruptcy of the plaintiffs. ECF 37.

*Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Rule 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendant with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ." (citation omitted)); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555.

To be sure, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. ___, 135 S. Ct. 346, 346 (2014) (per curiam). Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). A complaint is insufficient if it provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very

remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted).

In reviewing a Rule 12(b)(6) motion, a court "'must accept as true all of the factual allegations contained in the complaint'" and must "'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. Maryland Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Belmora, LLC v. Bayer Consumer Care AG*, 819 F.3d 697, 705 (4th Cir. 2016); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). But, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

In general, courts do not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses" through a Rule 12(b)(6) motion. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). The purpose of the rule is to ensure that defendants are "given adequate notice of the nature of a claim" made against them. *Twombly*, 550 U.S. at 555-56 (2007). But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan*, 533 F.3d 334, 336 (4th Cir. 2009); *see also U.S. ex rel. Oberg v. Penn. Higher Educ. Assistance Agency*, 745 F.3d 131, 148 (4th Cir. 2014). However,

because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] on the face of the complaint.'" *Goodman*, 494 F.3d at 464 (quoting *Forst*, 4 F.3d at 250) (emphasis added in *Goodman*).

To survive a motion to dismiss, a complaint, relying on only well-pled factual allegations, must state a "plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). The "mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012). To determine whether a complaint has crossed "the line from conceivable to plausible," a court must employ a context-specific inquiry, drawing on the court's "experience and common sense." *Iqbal*, 556 U.S. at 679-80.

Under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider exhibits, without converting the motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015). In particular, a court may consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits . . . ." *Goines*, 822 F.3d at 166 (citations omitted); *see also U.S. ex rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999). A court may also take judicial notice of matters of public record. *Philips*, *supra*, 572 F.3d at 180.

However, "before treating the contents of an attached or incorporated document as true,

the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167 (citing *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 455 (7th Cir. 1998)). "When the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Goines*, 822 F.3d at 167. Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

A court may also "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166 (citations omitted); *see also Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *petition for cert. filed*, No. 17-492 (Oct. 3, 2017); *Kensington Volunteer Fire Dep't. v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012). To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original).

Plaintiff submits several exhibits with his Amended Complaint. *See* ECF 24-2 at 1-9 (Proof of complaint that plaintiff filed with the Consumer Financial Protection Bureau); ECF 24-2 at 11-13 (Proof of complaint that plaintiff filed with the Federal Bureau of Investigation); ECF 24-2 at 14-19 (Department of Justice press release on BOA settlement for financial fraud); ECF 24-2 at 20-21 (List of BOA securitizations); ECF 24-2 at 22-23 (Business Wire release on Fitch rating of BOA Funding Corp.'s mortgage pass through certificates, series 2007-B); ECF 24-2 at 24-25

(Plaintiff's e-mail to the Department of Housing and Urban Development, Office of Inspector General); ECF 24-2 at 26-29 (Proof of complaint that plaintiff filed with the Office of the Comptroller of the Currency); ECF 24-2 at 30-32 (Proof of complaint that plaintiff filed with the Department of Justice); ECF 24-3 (Proof of complaint that plaintiff filed with the Consumer Financial Protection Bureau); ECF 24-4 (Letter from Shellpoint to plaintiff); ECF 24-5 (Letter from Residential to plaintiff); ECF 24-6 (Residential's mortgage statement for plaintiff); ECF 24-7 at 2 (Interest rates on BOA mortgage per adjustable rate note); ECF 24-7 at 3-8 (BOA's adjustable rate note); ECF 24-8 (Plaintiff's annotated copy of proof of the claim submitted by Shellpoint in the U.S. Bankruptcy Court, Baltimore Division). Because these exhibits are incorporated into the Amended Complaint, I may consider them without converting the motions to dismiss to motions for summary judgment.

Additionally, defendants submit various exhibits with their motions to dismiss. *See* ECF 31-2 (Deed of Trust); ECF 31-3 (Uniform Residential Loan Application, dated February 13, 2007); ECF 31-4 (Exception/Accommodation Request Form submitted by plaintiff to BOA, dated January 18, 2007); ECF 31-5 (the docket from the Circuit Court for Harford County case of *Wittstadt v. Giannasca*, No. 12C12003437); ECF 34-2 (Order of this Court, dated January 26, 2017, in the case of *Giannasca v. Bank of America, et al.*, JFM-16-2002).

The Deed of Trust (ECF 31-2) submitted as an exhibit to the BOA Motion is integral to plaintiff's claim of "flipping" a "struggling loan." In that claim, plaintiff appears to challenge the legality of the sale of the Construction Loan from Bank of America to Carrington, then to Residential, and then to Shellpoint. *See* ECF 24-1 at 18. Plaintiff does not dispute the authenticity of the Deed of Trust. *See* ECF 38. And, the Deed of Trust gives rise to the rights plaintiff asserts in his claim of "flipping" a "struggling loan." *See* ECF 24-1 at 18. Accordingly, the Deed of Trust

(ECF 31-2) is integral to the Amended Complaint, and I may consider it without converting the BOA Motion to one for summary judgment.

The Court is mindful that the pleadings of a pro se litigant, such as plaintiff, are "held to less rigorous standards than formal pleadings drafted by lawyers" *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also White v. White*, 886 F.2d 721, 722-23 (4th Cir. 1989).

### III. Discussion

### A. Subject Matter Jurisdiction

The "burden of establishing subject matter jurisdiction is on . . . the party asserting jurisdiction." *Robb Evans & Assocs., LLC v. Holibaugh*, 609 F.3d 359, 362 (4th Cir. 2010). And, this Court, like all federal courts, has "an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010).

Under 28 U.S.C. § 1332(a)(1), federal district courts have subject matter jurisdiction over "civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." Diversity jurisdiction under § 1332 "requires complete diversity among parties, meaning that the citizenship of every plaintiff must be different from the citizenship of every defendant." *Cent. W. Va. Energy Co. v. Mountain State Carbon, LLC*, 636 F.3d 101, 103 (4th Cir. 2011).

In this case, defendants Bank of America, Kafouros, and Derewyanko filed a Notice of Removal, invoking this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. *See* ECF 1. The parties are diverse except for plaintiff Giannasca and defendant Moran. *Id.* ¶¶ 24-33. Both are citizens of Maryland. *Id.* ¶¶ 24, 34.

### 1. Fraudulent Joinder

To justify diversity jurisdiction, despite the incomplete diversity of the parties, defendants BOA, Kafouros, and Derewyanko invoked the doctrine of fraudulent joinder in their Notice of Removal.  ECF 1, ¶¶ 34-35.  They asserted that "there is no possibility that Plaintiff can establish a cause of action against Mr. Moran, and, accordingly, his citizenship should be disregarded for diversity purposes." *Id.* ¶ 34.  Plaintiff has not disputed defendants' contention.  Nevertheless, I have "an independent obligation to determine whether subject-matter jurisdiction exists" here. *Hertz*, 559 U.S. at 94.  I agree with the defendants: the doctrine of fraudulent joinder applies and thus this Court has subject-matter jurisdiction.

The Fourth Circuit has adopted an exception to complete diversity known as the doctrine of fraudulent joinder.  *See Mayes v. Rapoport*, 198 F.3d 457, 464 (4th Cir. 1999).  The fraudulent joinder doctrine prevents a plaintiff from including or adding a non-diverse defendant solely for the purpose of defeating federal diversity jurisdiction.  *See id.* at 461 n.8.  When the doctrine applies, a court can "disregard, for jurisdictional purposes, the citizenship of certain non-diverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." *Mayes*, 198 F.3d at 464; *accord Schur v. L.A. Weight Loss Centers, Inc.*, 577 F.3d 752, 763 (7th Cir. 2009); *Balt. Cnty. v. Cigna Healthcare*, 238 F. App'x 914, 920 (4th Cir. 2007); *In re Briscoe*, 448 F.3d 201, 216 (3d Cir. 2006).

"Despite the . . . use of the term 'fraudulent joinder,' the party seeking the federal forum . . . does not have to show that the joinder of a nondiverse party was motivated primarily by a desire to remain in state court or to prove that the state court plaintiff's conduct constituted fraud in some legal sense."  Charles Alan Wright & Arthur R. Miller, 13F Fed. Prac. & Proc. Juris., § 3641.1 (3d ed.).  Rather, the party seeking the federal forum must show that "'there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state

14

defendant in state court; or [when] there has been outright fraud in the plaintiff's pleading of jurisdictional facts.'" *Mayes*, 198 F.3d at 464 (quoting *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993)) (emphasis in *Marshall*).

"The burden on the defendant claiming fraudulent joinder is heavy: the defendant must show that the plaintiff cannot establish a claim against the nondiverse defendant even after resolving all issues of fact and law in the plaintiff's favor." *Mayes*, 198 F.3d at 464. This "standard for evaluating a fraudulent joinder issue 'is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6).'" *Baltimore Cty. v. Cigna Healthcare*, 238 F. App'x 914, 920 (4th Cir. 2007) (quoting *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir.1999)).[9] When evaluating the issue, "the court is not bound by the allegations of the pleadings, but may instead 'consider the entire record, and determine the basis of joinder by any means available.'" *Mayes*, 198 F.3d at 464 (quoting *AIDS Counseling & Testing Centers v. Group W Television, Inc.*, 903 F.2d 1000, 1004 (4th Cir. 1990)).

According to defendants, under the doctrine of qualified immunity, there is no basis for suit against Moran. *See* ECF 35-1 at 6-7. I turn to consider this contention.

Although only the claims against Moran determine whether the doctrine of fraudulent joinder applies, I shall also address the claims against Stern & Eisenberg,[10] because they involve the same allegations.

## 2. Qualified Privilege

---

[9] "It is worth noting that at the time *Hartley* was decided, the 12(b)(6) standard had not yet been changed from possibility to plausibility. Thus, the Fourth Circuit in *Hartley* was noting that the fraudulent joinder standard is higher than the old possibility standard of 12(b)(6)." *Allard v. Laroya*, 163 F. Supp. 3d 309, 314 (E.D. Va. 2016).

[10] Stern & Eisenberg is a Pennsylvania citizen for the purposes of diversity jurisdiction. ECF 1, ¶ 33. It is therefore a diverse party, as Giannasca is a citizen of Maryland. ECF 1, ¶ 24.

Moran, an attorney, and the law firm of Stern & Eisenberg represented Wilmington Trust, Shellpoint, and V Mortgage. *See* Docket. Moran and Stern & Eisenberg argue that the doctrine of qualified privilege prevents plaintiff from suing them "for the bare act of representing their client and filing a pleading . . . ." *See* ECF 35-1 at 7.

Under the qualified privilege doctrine, in the absence of actual malice, attorneys are protected from civil liability as to their clients' litigation adversaries or third parties for claims that are "based on words written or spoken in the course of a judicial proceeding." *O'Brien & Gere Eng'rs, Inc. v. City of Salisbury*, 222 Md. App. 492, 522, 113 A.3d 1129, 1147 (2015), *aff'd*, 447 Md. 394, 135 A.3d 473 (2016); *see also Havilah Real Prop. Servs., LLC v. Early*, 216 Md. App. 613, 633, 88 A.3d 875, 887 (2014).[11] In applying the privilege, courts employ a substance-over-form analysis, considering "whether immunity from liability is consistent with and will serve the public policy objectives of the privilege, and [applying] the privilege when that is the case." *O'Brien & Gere Eng'rs, Inc.*, 222 Md. App. at 522, 113 A.3d at 1147. The privilege, however, is removed if an attorney acts with actual malice, bad intent, or for his or her own personal benefit. *Early*, 216 Md. App. at 633, 88 A.3d at 887. To constitute actual malice, "the attorney must possess a desire to harm which is independent of the desire to protect his client." *Fraidin v. Weitzman*, 93 Md. App. 168, 237, 611 A.2d 1046, 1080 (1992) (citing *Schott v. Glover*, 109 Ill. App. 3d 230, 235, 440 N.E. 2d 376, 380 (1982)).

Giannasca's allegations do not overcome the qualified privilege to which Moran and Stern & Eisenberg are entitled. Count Three, lender fraud and misrepresentation, is based on allegations that Shellpoint, Giannasca's current mortgage servicer, misrepresented amounts in its loan

---

[11] The qualified privilege applies to all claims that fit this description, not just defamation claims. *O'Brien & Gere Eng'rs*, 222 Md. App. at 522, 113 A.3d at 1147.

documentation, such as Giannasca's interest rate and monthly mortgage payment. ECF 24-1 at 19. In asserting this claim against Moran and Stern & Eisenberg, Giannasca alleges that these defendants did not correct the numbers in their client's documents and "are not concerned about accuracy and are filing whatever their client gives them, right or wrong." ECF 24-1 at 19. These are the only allegations specifically addressing Moran and Stern & Eisenberg. Plaintiff does not suggest that the attorneys acted with malice or had any personal motivation to harm Giannasca.

Under the facts alleged, "there is *no possibility*" that Giannasca can "establish a cause of action against" Moran or Stern & Eisenberg. *Mayes*, 198 F.3d at 464 (quoting *Marshall*, 6 F.3d at 232) (emphasis in *Marshall*). In the absence of allegations that they acted with actual malice, plaintiff cannot overcome their qualified privilege. Accordingly, the doctrine of fraudulent joinder applies, and this Court has subject matter jurisdiction under 18 U.S.C. § 1332.

Therefore, I shall dismiss the claims against both Moran and Stern & Eisenberg. *Baltimore Cty.*, 238 F. App'x at 920.[12]

### B. Personal Jurisdiction

Kafouros and Derewyanko argue, *inter alia*, under Fed. R. Civ. P. Rule 12(b)(2), that the claims against them are subject to dismissal for lack of personal jurisdiction. ECF 31-1 at 8-9. They note that plaintiff claims that these defendants live and work in Florida. ECF 31-1 at 8; *see* ECF 24-1 at 3. As described below, plaintiff's claims against Kafouros and Derewyanko are subject to dismissal for lack of personal jurisdiction.

Defendants' motion to dismiss for lack of personal jurisdiction is predicated on Fed. R. Civ. P. Rule 12(b)(2). "[A] Rule 12(b)(2) challenge raises an issue for the court to resolve, generally as a preliminary matter." *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016).

---

[12] I shall dismiss Count Five against all defendants, on other grounds. *See infra* at 32.

Under Rule 12(b)(2), the burden is "on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989); *see Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 558 (4th Cir. 2014); *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctr's, Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) (citing *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 59-60 (4th Cir. 1993)).

"When, however, as here, a district court decides a pretrial personal jurisdiction motion without conducting an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction." *Carefirst of Md.*, 334 F.3d at 396 (citing *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)). In determining whether the plaintiff has met his burden, "the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Combs*, 886 F.2d at 676. The court is "not required . . . to look solely to the plaintiff's proof in drawing" all reasonable inferences in the plaintiff's favor, and may also look at the defendants' assertions and proffered proof regarding defendants' lack of contacts with the forum. *Mylan Labs., Inc.*, 2 F.3d at 62.

As indicated, "[w]hen determining whether a plaintiff has made the requisite *prima facie* showing, the court must take the allegations and available evidence relating to personal jurisdiction in the light most favorable to the plaintiff." *Grayson*, 816 F.3d at 268; *see Carefirst of Md.*, 334 F.3d 396. But, "district courts are not required . . . to look solely to the plaintiff's proof in drawing those inferences." *Mylan Laboratories*, 2 F.3d at 62. And, "'[a] threshold *prima facie* finding that personal jurisdiction is proper does not finally settle the issue; plaintiff must eventually prove the existence of personal jurisdiction by a preponderance of the evidence, either at trial or at a pretrial evidentiary hearing.'" *New Wellington Fin. Corp. v. Flagship Resort Dev.*

*Corp.*, 416 F.3d 290, 294 n.5 (4th Cir. 2005) (emphasis in original) (citation omitted).

Fed. R. Civ. P. 4(k)(1)(A) authorizes a federal district court to exercise personal jurisdiction over a defendant in accordance with the law of the state in which the district court is located. *Carefirst of Md.*, 334 F.3d at 396. Therefore, in Maryland, "to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment." *Id.*; *accord Carbone v. Deutsche Bank Nat'l Tr. Co.*, RDB-15-1963, 2016 WL 4158354, at *5 (D. Md. Aug. 5, 2016).

Maryland's long-arm statute is codified at Md. Code (2013 Repl. Vol., 2016 Supp.), § 6-103(b) of the Courts & Judicial Proceedings Article ("C.J."). It authorizes "personal jurisdiction over a person, who directly or by an agent," *id.*:

(1) Transacts any business or performs any character of work or service in the State;
(2) Contracts to supply goods, food, services, or manufactured products in the State;
(3) Causes tortious injury in the State by an act or omission in the State;
(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;
(5) Has an interest in, uses, or possesses real property in the State; or
(6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

When interpreting the reach of Maryland's long-arm statute, a federal district court is bound by the interpretations of the Maryland Court of Appeals. *See Carbone*, 2016 WL 4158354, at *5; *Snyder v. Hampton Indus., Inc.*, 521 F. Supp. 130, 135-36 (D. Md. 1981), *aff'd*, 758 F.2d 649 (4th Cir. 1985); *see also Mylan Laboratories*, 2 F.3d at 61. The Maryland Court of Appeals

has "consistently held that the reach of the long arm statute is coextensive with the limits of personal jurisdiction delineated under the due process clause of the Federal Constitution" and that the "statutory inquiry merges with [the] constitutional examination." *Beyond Systems, Inc. v. Realtime Gaming Holding Co.*, 388 Md. 1, 22, 878 A.2d 567, 580 (2005) (citing *Mohamed v. Michael*, 279 Md. 653, 657, 370 A.2d 551, 553 (1977)); *see also Stover v. O'Connell Assocs., Inc.*, 84 F.3d 132, 135-36 (4th Cir. 1996) (stating that "the two inquiries essentially become one"); *accord ALS Scan, Inc. v. Digital Service Consultants, Inc.*, 293 F.3d 707, 710 (4th Cir. 2002).

To be sure, "the reach of the [long-arm] statute is as far as due process permits . . . ." *Mackey v. Compass Marketing, Inc.*, 391 Md. 117, 140 n.5, 892 A.2d 479, 492 n.5 (2006). However, the Maryland Court of Appeals has clarified that the statutory analysis remains a requirement of the personal jurisdiction analysis. In *Mackey*, the Maryland Court of Appeals said, 391 Md. at 141 n.6, 892 A.2d at 493 n.6 (citations omitted):

> We stated recently in *Beyond v. Realtime* . . . that "the purview of the long arm statute is coextensive with the limits of personal jurisdiction set by the due process clause of the Federal Constitution." We did not, of course, mean by this that it is now permissible to simply dispense with analysis under the long-arm statute . . . . Rather, . . . we interpret the long-arm statute to the limits permitted by the Due Process Clause when we can do so consistently with the canons of statutory construction.

Since *Mackey*, the Maryland Court of Appeals has repeatedly affirmed that "determining whether a Maryland court may exercise personal jurisdiction over a foreign defendant requires a two-step analysis." *Bond v. Messerman*, 391 Md. 706, 721, 895 A.2d 990, 999 (2006); *see also CSR, Ltd. v. Taylor*, 411 Md. 457, 472, 983 A.2d 492, 501 (2009) (stating that personal jurisdiction analysis "entails dual considerations"). First, the court considers "whether the requirements of Maryland's long-arm statute[] are satisfied." *CSR*, 411 Md. at 472, 983 A.2d

at 501 (citing *Bond*, 391 Md. at 721, 895 A.2d at 999; *Mackey*, 391 Md. at 129, 892 A.2d at 486; and *Beyond*, 388 Md. at 14, 878 A.2d at 576). Second, it considers "whether the exercise of personal jurisdiction comports with the requirements imposed by the Due Process Clause of the Fourteenth Amendment.[1]" *CSR*, 411 Md. at 473, 983 A.2d at 501 (citing *Bond*, 391 Md. at 721, 895 A.2d at 999; and *Beyond*, 388 Md. at 15, 878 A.2d at 575). Nevertheless, the Maryland Court of Appeals has, in some situations, declined to consider the first step where the analysis of the second step demonstrates conclusively that personal jurisdiction over the defendant would violate due process. *See, e.g.*, *Bond*, 391 Md. at 722, 895 A.2d at 1000.

The United States Supreme Court has long held that personal jurisdiction over a nonresident defendant is constitutionally permissible so long as the defendant has "minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Courts have separated this test into individual "prongs," first ascertaining whether the threshold of "minimum contacts" is met, and then considering whether the exercise of jurisdiction on the basis of those contacts is "constitutionally reasonable." *ALS Scan*, 293 F.3d at 712.

Due process jurisprudence recognizes "two types of personal jurisdiction: general and specific." *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 292 n.15 (4th Cir. 2009). The Fourth Circuit has explained:

> General personal jurisdiction, on the one hand, requires "continuous and systematic" contacts with the forum state, such that a defendant may be sued in that state for any reason, regardless of where the relevant conduct occurred. Specific personal jurisdiction, on the other hand, requires only that the relevant conduct have such a connection with the forum state that it is fair for the defendant to defend itself in that state.

*Id.* (citing, *inter alia*, *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15,

(1984)) (internal citations omitted).

A court may exercise general jurisdiction over foreign corporations to hear "any and all claims" against the corporations "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe*, 326 U.S. at 317). In contrast, specific jurisdiction "depends on an 'affiliatio[n] between the forum and the underlying controversy . . . .'" *Id.* (citation omitted) (alteration in *Goodyear*).

When the defendant is a nonresident corporate agent, the court must examine the defendant's contacts with the forum state in his individual capacity. *Birrane v. Master Collectors, Inc.*, 738 F. Supp. 167, 169 (D. Md. 1990). The defendant's contacts as a corporate agent on corporate business are not sufficient to establish personal jurisdiction. *Rhee Bros. v. Han Ah Reum Corp.*, 178 F. Supp. 2d 525, 532 (D. Md. 2001) (citations omitted). This court has explained, *Birrane v. Master Collectors, Inc.*, 738 F. Supp. 167, 169 (D. Md. 1990) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)):

> An individual who has chosen simply to transact business in a state through a valid and viable corporation has not necessarily "purposefully availed" himself of "the privilege of conducting activities within . . . [that] State" in his individual capacity . . . Nor can it be said that he would "reasonably anticipate being haled into court" in the state in his individual capacity by virtue of the corporation's activities there.

As indicated, general jurisdiction allows a plaintiff to bring "any and all claims" against a party in that jurisdiction. *Goodyear*, 564 U.S. at 919. "[T]he threshold level of minimum contacts sufficient to confer general jurisdiction is significantly higher than for specific jurisdiction." *ALS Scan*, 293 F.3d at 715 (internal quotation marks omitted); *accord Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 276 (4th Cir. 2005). The Fourth Circuit has long held that "broad constructions of general jurisdiction" are "generally disfavored." *Nichols v. G.D. Searle &*

*Co.*, 991 F.2d 1195, 1200 (4th Cir. 1993).

To determine whether there is specific jurisdiction over a defendant, courts consider: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Consulting Eng'rs*, 561 F.3d at 278 (citing *ALS Scan*, 293 F.3d at 715); *accord Unspam Techs., Inc. v. Chernuk*, 716 F.3d 322, 328 (4th Cir. 2013); *ESAB Grp., Inc. v. Zurich Ins. PLC*, 685 F.3d 376, 392 (4th Cir. 2012); *Carefirst of Md.*, 334 F.3d at 397.

Giannasca avers that Kafouros and Derewyanko are Florida residents. ECF 24-1 at 3. He alleges no facts to suggest that, except for activities related to their employment, Kafouros and Derewyanko maintained contacts with Maryland. ECF 2. Another judge of this court has previously found it could not exercise personal jurisdiction over a defendant whose "only contact with the forum state was entirely within the scope of his corporate capacity[.]" *Mates v. N. Am. Vaccine, Inc.*, 53 F. Supp. 2d 814, 821 (D. Md. 1999) (citing *Calder v. Jones*, 465 U.S. 783, 790 (1984)).

In *Mates*, 53 F. Supp. 2d at 821, the court noted that the defendant was not a Maryland resident. The court also found that the defendant's "only contacts . . . with Maryland" were "by way of his position as" CEO of a corporation and his membership on its board of directors. *Id.* Because the defendant's only contacts with Maryland were made in his "corporate capacity," the court concluded that it lacked personal jurisdiction over the defendant. *Id.*

The only contact that Derewyanko and Kafouros had with the Maryland was within the scope of their Bank of America employment. These corporate capacity contacts are insufficient to give rise to personal jurisdiction as to them. Indeed, Giannasca concedes that this court lacks

personal jurisdiction over defendants Derewyanko and Kafouros by failing to respond to this argument in his Opposition. *See* ECF 38; *Stenlund v. Marriot Int'l, Inc.*, 172 F. Supp. 3d 874, 887 (D. Md. 2016) ("In failing to respond to [defendant's] argument, Plaintiff concedes the point.").

Giannasca has not established a prima facie showing of personal jurisdiction over Derewyanko or Kafouros. Accordingly, all claims against Derewyanko or Kafouros are subject to dismissal, *without prejudice*, for lack of personal jurisdiction.

## C. Lender Fraud and Misrepresentation

Count Three alleges lender fraud and misrepresentation against BOA, Moran, and Stern & Eisenberg. ECF 24-1 at 19-20.[13] Plaintiff asserts that BOA used "inaccuracies in their numbers," such as "inaccurate LIBOR rates." *Id.* at 19. He also contends that his "mortgage was securitized almost immediately after closing in 2007, placed in a B of A trust and sold off on Wall Street[.]" *Id.* In its motion to dismiss, BOA argues that "[p]laintiff failed to plead any elements of fraud or misrepresentation" under Maryland law. ECF 31-1 at 14.

As a preliminary matter, claims that sound in fraud, whether rooted in common law or arising under a statute, implicate the heightened pleading standard of Fed. R. Civ. P. 9(b). *See, e.g., E-Shops Corp. v. U.S. Bank N.A.,* 678 F.3d 659, 665 (8th Cir. 2012) ("Rule 9(b)'s heightened pleading requirement also applies to statutory fraud claims."); *see also Spaulding v. Wells Fargo Bank, N.A.,* 714 F.3d 769, 781 (4th Cir. 2013) (stating that a Maryland Consumer Protection Act claim that "sounds in fraud, is subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b)").

---

[13] As noted, the claims against Moran and Stern & Eisenberg are subject to dismissal because no facts were asserted to overcome their qualified privilege.

Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Under the rule, a plaintiff alleging claims that sound in fraud "'must, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *United States ex rel. Owens v. First Kuwaiti Gen'l Trading & Contracting Co.,* 612 F.3d 724, 731 (4th Cir. 2010) (citation omitted). In other words, "'Rule 9(b) requires plaintiffs to plead the who, what, when, where, and how: the first paragraph of any newspaper story.'" *Crest Construction II, Inc. v. Doe,* 660 F.3d 346, 353 (8th Cir. 2011) (citation omitted).

> Rule 9(b) serves several salutary purposes:
>
> First, the rule ensures that the defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of . . . . Second, Rule 9(b) exists to protect defendants from frivolous suits. A third reason for the rule is to eliminate fraud actions in which all the facts are learned after discovery. Finally, Rule 9(b) protects defendants from harm to their goodwill and reputation.

*Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).

> Notably, however, Rule 9(b) by its plain text permits general averment of aspects of fraud

that relate to a defendant's state of mind. And, a "court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Id.* Moreover, Rule 9(b) is "less strictly applied with respect to claims of fraud by concealment" or omission of material facts, as opposed to affirmative misrepresentations, because "an omission 'cannot be described in terms of the time, place, and contents of the misrepresentation or the identity of the person making the misrepresentation.'" *Shaw v. Brown & Williamson Tobacco Corp.*, 973 F. Supp. 539, 552 (D. Md. 1997) (quoting *Flynn v. Everything Yogurt*, HAR-92-3421, 1993 WL 454355, at *9 (D. Md. Sept.

14, 1993)); *accord Gadson v. Supershuttle International*, AW-10-1057, 2011 WL 1231311, at * 9

(D. Md. Mar. 30, 2011).

Under Maryland law, "'[f]raud encompasses, among other things, theories of fraudulent

misrepresentation, fraudulent concealment, and fraudulent inducement.'" *Sass v. Andrew,* 152

Md. App. 406, 432, 832 A.2d 247, 261 (2003) (citation omitted). Regardless of the particular

theory, at trial the plaintiff must establish the elements of fraud "by clear and convincing

evidence." *Md. Envir. Trust v. Gaynor*, 370 Md. 89, 97, 803 A.2d 512, 516 (2002).

In an action for intentional or fraudulent misrepresentation, which is the garden variety of

fraud and is often described simply as "fraud," the plaintiff ordinarily must show:

> 1) that the defendant made a false representation to the plaintiff;
> 2) that its falsity was either known to the defendant or that the representation was
> made with reckless indifference as to its truth;
> 3) that the misrepresentation was made for the purpose of defrauding the plaintiff;
> 4) that the plaintiff relied on the misrepresentation and had the right to rely on it;
> and
> 5) that the plaintiff suffered compensable injury resulting from the
> misrepresentation."

*Nails v. S & R, Inc.*, 334 Md. 398, 415, 639 A.2d 660, 668 (1994); *accord Thomas v. Nadel*, 427

Md. 441, 451 n. 18, 48 A.3d 276, 282 n. 18 (2012); *Gourdine v. Crews*, 405 Md. 722, 758, 955

A.2d 769, 791 (2008); *Sass*, 152 Md. App. at 429, 832 A.2d at 260.

Additionally, "a cause of action for fraud" has "a strict requirement of scienter." *First*

*Union Nat'l Bank v. Steele Software Sys. Corp.*, 154 Md. App. 97, 147, 838 A.2d 404, 433 (2003).

"Recovery in a tort action for fraud or deceit in Maryland is based upon a defendant's deliberate

intent to deceive." *Id.* at 147, 838 A.2d at 433.

In Maryland, the "essential elements of a claim for fraudulent concealment" are that "(1)

the defendant owed a duty to the plaintiff to disclose a material fact; (2) the defendant failed to

disclose that fact; (3) the defendant intended to defraud or deceive the plaintiff; (4) the plaintiff

took action in justifiable reliance on the concealment; and (5) the plaintiff suffered damages as a result of the defendant's concealment." *Green v. H & R Block, Inc.*, 355 Md. 488, 525, 735 A.2d 1039, 1059 (1999); *accord Central Truck Ctr., Inc. v. Central GMC, Inc.*, 194 Md. App. 375, 394, 4 A.3d 515, 526 (2010); *Blondell v. Littlepage*, 413 Md. 96, 119, 991 A.2d 80, 94 (2010).

And, four elements must be shown to establish a claim for negligent misrepresentation: "(1) the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement; (2) the defendant intends that his statement will be acted upon by the plaintiff; (3) the defendant has knowledge that the plaintiff will probably rely on the statement, which, if erroneous, will cause loss or injury; (4) the plaintiff, justifiably, takes action in reliance on the statement; and (5) the plaintiff suffers damage[s] . . . ." *Lloyd v. General Motors Corp.*, 397 Md. 108, 136, 916 A.2d 257, 273 (2007) (citation and internal quotation marks omitted); *accord Central Truck Ctr., Inc.*, 194 Md. App. at 394-95, 4 A.3d at 526.

Here, Giannasca appears to allege that BOA is liable for inaccuracies contained on a web portal and in loan documents, and for relying on inaccurate information when pursuing foreclosure against plaintiff's property. ECF 24-1 at 19. However, plaintiff alleges no facts as to defendants' knowledge of the alleged inaccuracies. Nor does he allege facts as to defendants' intent to deceive plaintiff. And, plaintiff does not allege that he relied on the inaccurate information, or that he had a right to do so. Because Giannasca has failed to allege a claim of fraud with particularity, Count Three is subject to dismissal as to BOA.

### D. Fraud in the Inducement

In Count One, Giannasca alleges that BOA "fraudulently induced" him "into the mortgage on the[] Family Farm by approving the requested $2,000,000 re-financing . . . and doing a 'bait and switch' at the last minute to a $1,500,000 re-financing with a promised $750,000 Home Equity

Line, which never happened." ECF 24-1 at 17. In its Motion, BOA contends that plaintiff's claim of fraud in the inducement is barred by Maryland's statute of limitations. ECF 31-1 at 9-11. Specifically, BOA contends that plaintiff's claim for fraud in the inducement is untimely because plaintiff was advised in January 2007, "*prior* to the loan closing [in February 2007] that the Construction Loan would be funded at $1.5 million rather than $2 million . . . ." *Id.* at 10 (emphasis in original).

Under Maryland law, the limitations period for a civil action is three years from the date the claim accrues. C.J. § 5-101. This is true for claims of fraud and deceit. *See Thelen v. Mass. Mut. Life Ins. Co.*, 111 F. Supp. 2d 688, 692 (D. Md. 2000) (granting motion to dismiss because the three-year statute of limitation had passed since the fraud based claims were ripe). An action typically accrues at the time of the wrong, unless a judicial or legislative exception provides otherwise. *Poole v. Coakley & Williams Const., Inc.*, 423 Md. 91, 131, 31 A.3d 212, 236 (2011). But, "[r]ecognizing the unfairness inherent in charging a plaintiff with slumbering on his rights where it was not reasonably possible to have obtained notice of the nature and cause of an injury," Maryland has adopted the so-called discovery rule to determine the date of accrual. *See Bank of N.Y. v. Sheff*, 382 Md. 235, 244, 854 A.2d 1269, 1275 (2004); *Frederick Rd. Ltd. P'ship v. Brown & Sturm*, 360 Md. 76, 95, 756 A.2d 963, 973 (2000); *see also* C.J. § 5-203.

"The discovery rule acts to balance principles of fairness and judicial economy in those situations in which a diligent plaintiff may be unaware of an injury or harm during the statutory period." *Dual Inc. v. Lockheed Martin Corp.*, 383 Md. 151, 167, 857 A.2d 1095, 1104 (2004). Under the discovery rule, "a plaintiff's cause of action accrues when the plaintiff knows or reasonably should have known of the wrong." *Brown v. Neuberger, Quinn, Gielen, Rubin & Gibber, P.A.*, 731 F. Supp. 2d 443, 449 (D. Md. 2010) (citing *Lumsden v. Design Tech Builders,*

*Inc.*, 358 Md. 435, 444, 749 A.2d 796, 801 (2000)), *aff'd*, 495 F. App'x 350 (4th Cir. 2012); *see also Windesheim v. Larocca*, 443 Md. 312, 327, 116 A.3d 954, 962 (2015) (internal quotations omitted).

Giannasca states that "in early January 2007," BOA informed him that "BOA just went through sweeping system-wide changes in their loan products as of the first of the year which would reduce their loan funding from a 66.7% loan to value loan to a 50% loan to value loan[.]" ECF 24-1 at 12. Further, he avers, *id.*: "This unilateral change . . . changes their approved loan amount from $2 million to $1.5 million and would leave them $500,000 short from Bank of Americas [sic] prior Approval/Commitment and instructions to proceed with the renovations." Moreover, Giannasca concedes that he "communicated his acceptance on his reliance from BOA" in 2007. *Id.*

The reduction in the loan amount from $2,000,000 to $1,500,000 occurred in February 2007. *Id.* at 6. And, plaintiff avers that he was aware of, and accepted, the reduced loan offer when it closed on February 13, 2007. *Id.* As indicated, plaintiff filed suit on May 24, 2017 (ECF 2), more than ten years after he accepted the loan. Accordingly, he may not rely on the discovery rule in regard to BOA's limitations argument. Therefore, Giannasca's claim of fraud in the inducement against BOA is untimely. *See also Taylor v. OneWest Bank*, PJM-10-2247, 2011 WL 768962, at *2-3 (D. Md. Feb. 28, 2011) (concluding that a borrower's claim of fraudulent inducement accrued on the date she closed on the mortgage loan).[14] The claim for fraud in the inducement shall be dismissed, with prejudice.

---

[14] By failing to respond to BOA's limitations argument, Giannasca concedes that the claim of fraud in the inducement is untimely. *See* ECF 38; *Stenlund*, 172 F. Supp. 3d at 887 ("In failing to respond to [defendant's] argument, Plaintiff concedes the point.").

## E.  "Flipping" the "Struggling Loan"

In Count Two, Giannasca contends that BOA and Residential "flipped" the "struggling loan."  Plaintiff asserts that Carrington "advised" him that it had "purchased the mortgage from Bank of America at a tremendous discount," and that Carrington "offered Giannasca a short payoff of $600,000 or the lesser of what he would be approved for on a new mortgage at that time." ECF 24-1 at 18.  Further, plaintiff alleges that "[s]oon after" Carrington's offer, it "flipped the loan to Residential Credit Solutions, who then flipped it to Wilmington Trust/Shellpoint Mortgage Servicing[.]"  *Id.*

BOA argues that Maryland law provides no cause of action for flipping a struggling loan. ECF 31-1 at 13.  BOA also argues that, "to the extent that Plaintiff seeks to challenge the sale of the Construction Loan from Bank of America to Carrington," the "Deed of Trust specifically allowed Bank of America to sell the Construction Loan and to effectuate a change in servicer[.]" *Id.* at 13.  Residential contends that plaintiff's mortgage loan was transferable and that a substitute trustee has the right to foreclose on a loan.  *See* ECF 34-1 at 5; ECF 35-1 at 4-5.

As an initial matter, "flipping" a "struggling loan" is not a cause of action.  Giannasca appears to be challenging the transfer of the construction loan from Bank of America to Carrington, then to Residential, and then to Shellpoint.  *See* ECF 24-1 at 18.  However, the Deed of Trust (ECF 31-2) explicitly permitted such transactions.  It states, in relevant part, *id.* ¶ 20 (bold in original):

> **Sale of Note; Change of Loan Service; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower.  A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security instrument and performs other mortgage loan servicing obligations under the Note . . . .

Notably, plaintiff signed the Deed of Trust on February 13, 2007.  *See* ECF 31-2 at 10. Maryland law also permits transfer of mortgage loans.  *See Deutsche Bank Nat'l Tr. Co. v. Brock*,

430 Md. 714, 728 (2013) ("A deed of trust securing a negotiable promissory note 'cannot be transferred like a mortgage; rather, the corresponding note may be transferred, and carries with it the security provided by the deed of trust.'") (quoting *Anderson v. Burson*, 424 Md. 232, 246 (2011)).  Accordingly, Count Two is subject to dismissal.

### F.  Conspiracy

In Count Four, Giannasca alleges "conspiracy and collusion" against Bank of America. ECF 24-1 at 20.  BOA contends that civil conspiracy and collusion are not independent torts capable of sustaining damages.  ECF 31-1 at 15.  It argues that conspiracy requires an "unlawful or tortious act done in furtherance of the conspiracy" or the "use of unlawful or tortious means to accomplish an act" that is not in itself illegal.  *Id.* (citation omitted).

A claim of civil conspiracy requires proof of three elements: "(1) a confederation of two or more persons by agreement or understanding; (2) some unlawful or tortious act done in furtherance of the conspiracy or use of lawful or tortious means to accomplish an act not in itself illegal; and (3) actual legal damages resulting to the plaintiff."  *Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 154, 916 A.2d 257, 284 (2007) (quoting *Van Royen v. Lacey*, 262 Md. 94, 97-98, 277 A.2d 13, 14-15 (1971)); *see also Bellezza v. Greater Havre De Grace Yacht Club, Inc.*, No. 0367 Sept. Term 2014, 2015 WL 6394418, at *9 (Md. Ct. Spec. App. Oct. 22, 2015), *cert. denied*, 446 Md. 291, 132 A.3d 194 (2016).  But, "civil conspiracy is not a 'separate tort capable of independently sustaining an award of damages in the absence of other tortious injury to the plaintiff.'"  *Bellezza*, 2015 WL 6394418, at *9 (quoting *Alleco, Inc. v. Harry & Jeanette Weinberg Found., Inc.*, 340 Md. 176, 189, 665 A.2d 1038, 1045 (1995)); *see also Alexander v. Evander*, 336 Md. 635, 645 n.8, 650 A.2d 260, 265 n.8 (1994).

Accordingly, plaintiff must allege that he was injured by an overt tortious act done in

pursuance of a conspiracy. *Alleco, Inc.*, 340 Md. at 189-90, 665 A.2d at 1045. In other words, "it is not . . . for simply conspiring to do the unlawful act that the action [of conspiracy] lies. It is for doing the act itself, and the resulting actual damage to the plaintiff, that afford the ground of the action." *Id.* at 190, 665 A.2d at 1045 (quoting *Kimball v. Harman and Burch*, 34 Md. 407, 409, 1871 WL 4137, at *1 (1871)).

Here, Giannasca alleges that he suffered damages when BOA allowed the "opening of the Crescent City bank account with improper documentation[.]" ECF 24-1 at 17. Plaintiff does not state who opened the bank account on behalf of Crescent City. As indicated, plaintiff avers that he owns a 50% interest in Crescent City. *Id.* at 20. And, he refers to the case of *Crescent City Estates, LLC v. Bank of America, N.A.*, CCB-08-3458, in which Crescent City, LLC alleged conversion against BOA for allowing Fisher, *inter alia*, to open an unauthorized BOA account on behalf of Crescent City and deposit $11,000,000 into that account. *See* CCB-08-3458, ECF 2.

In his Amended Complaint, plaintiff avers that BOA allowed Fisher to deposit a $5,000,000 check into a BOA account, despite the check being "made payable to a non-existent corporation." *Id.* Plaintiff does not identify the "non-existent corporation." *Id.* Accordingly, it is not clear if the "non-existent corporation" is Crescent City, a limited liability company, or another entity. Additionally, plaintiff avers that Fisher was "not a signatory or authorized user" of the account. *Id.* Moreover, plaintiff alleges that BOA allowed Fisher to "make withdrawals from an account without any authority whatsoever to do so" and that BOA allowed "Fisher to deposit monies into personal accounts without the account owners knowledge and control." ECF 24-1 at 17.

From the facts in the Amended Complaint, it is not clear what, if any, tort has been alleged as the basis for plaintiff's claim of civil conspiracy.

As indicated, the claim underlying *Crescent City Estates, LLC v. Bank of America, N.A.*, CCB-08-3458, was conversion. *See* CCB-08-3458, ECF 2. But, plaintiff has not alleged conversion in this suit. *See* ECF 24-1. To be sure, plaintiff contends that Fisher "was personally responsible for soliciting and delivering Bank of America, Palm Beach to the Giannasca Family's Farm in Harford County, Maryland." ECF 2-2 at 22. And, plaintiff asserts that Crescent City and BOA reached a $5,700,000 settlement agreement in 2011, which arose from Crescent City's allegations of conversion against BOA. ECF 24-1 at 20; *see also* CCB-08-3458, ECF 2; CCB-08-3458, ECF 108. Further, plaintiff alleges that he was not a party to the Crescent City settlement, even though he owned a 50% interest in Crescent City. ECF 24-1 at 20. But, plaintiff has not indicated what tort, if any, arises from these allegations.

Notably, plaintiff raises the claim of conspiracy against BOA only. ECF 2. He has not made clear who, in addition to BOA, formed "a confederation of two or more persons by agreement or understanding," as is required for a claim of civil conspiracy. *Lloyd*, 397 Md. at 154, 916 A.2d at 284. Although plaintiff mentions Crescent City and Fisher in the Amended Complaint, he does not assert that they conspired with BOA.

BOA argues that "engaging in a settlement of a lawsuit is not a separate tort capable of independently sustaining an award of damages[.]" ECF 31-1 at 16. And, plaintiff has not alleged what tort, if any, arose because of that settlement. And, as indicated, plaintiff has not named a coconspirator. Therefore, Giannasca has failed to allege facts sufficient for a claim of conspiracy. Accordingly, Count Four is subject to dismissal.

### G. Punitive Damages

Count Five of Giannasca's Amended Complaint seeks punitive damages against all defendants for "trying to steal, under false and fraudulent pretenses, the valuable equity in"

plaintiff's property. ECF 24-1 at 21. A request for punitive damages does not itself constitute a cause of action. *Beverly v. Vitran Exp., Inc.*, CCB-12-1599, 2012 WL 3772579, at \*5 (D. Md. Aug. 28, 2012) ("[A] request for punitive damages does not constitute a separate count or claim."). Reviewing plaintiff's pleading liberally, as I must, I shall construe the claim for punitive damages as a prayer for relief in which plaintiff seeks the remedy of punitive damages as to his claims of fraud.

Because plaintiff's Amended Complaint is subject to dismissal for failure to state a claim upon which relief may be granted, I shall not reach the issue of punitive damages at this juncture.

### H. Res Judicata

Although the defendants did not raise res judicata, the Court may consider whether it applies, sua sponte. *Clodfelter v. Republic of Sudan*, 720 F.3d 199, 208 (4th Cir. 2013) ("Although no sister circuit appears to have directly addressed this issue either, courts have consistently described a district court's sua sponte consideration of a res judicata defense as permissible but not required.") ; *see, e.g.*, *Arizona v. California*, 530 U.S. 392, 412 (2000); *Carbonell v. La. Dep't of Health & Human Res.*, 772 F.2d 185, 189 (5th Cir. 1985); *Anne Arundel Cty. Bd. of Educ. v. Norville*, 390 Md. 93, 105-06, 887 A.2d 1029, 1035-36 (2005).

Res judicata, or claim preclusion, is a judicial doctrine by which "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *Montana v. United States*, 440 U.S. 147, 153 (1979). The doctrine is intended to preclude parties from "contesting matters that they have had a full and fair opportunity to litigate," thereby conserving judicial resources and minimizing the possibility of inconsistent decisions. *Id.* at 153-54. Res judicata applies when the following three elements are present: "(1) a final judgment on the merits in an earlier suit, (2) an identity of the cause of action in both the earlier and later suit, and (3) an

identity of parties or their privies in the two suits." *Young-Henderson v. Spartanberg Area Mental Health Ctr.*, 945 F.2d 770, 773 (4th Cir.1991) (quoting *Nash Cty. Bd. of Educ. v. Biltmore Co.*, 640 F.2d 484, 486 (4th Cir. 1981)).

First, as noted, Giannasca and Giannasca Family Farm, LLC previously filed a suit arising out of the same mortgage dispute. *See Giannasca v. Bank of America, N.A. et. al.*, JFM-16-2002, ECF 2. Defendants separately filed five motions to dismiss under Fed. R. Civ. P 12(b)(6). *Giannasca*, JFM-16-2002, ECF 13, ECF 20, ECF 29, ECF 32, ECF 34. Plaintiffs did not respond to any of the five motions. *See Giannasca*, JFM-16-2002, Docket. Before the court could rule on the motions, however, the suit was administratively closed, without prejudice, after plaintiffs filed bankruptcy proceedings. *Giannasca*, JFM-16-2002, ECF 37. Nevertheless, defendants filed motions to reopen the case (*Giannasca*, JFM-16-2002, ECF 38, ECF 39), and the court, finding the motions "well-founded," granted them. *Giannasca*, JFM-16-2002, ECF 42. Since plaintiffs had "not responded to defendants' motions to dismiss," the court also granted four of the motions to dismiss, but did not address Residential's motion (*Giannasca*, JFM-16-2002, ECF 13). *Giannasca*, JFM-16-2002, ECF 42. No appeal was taken. As a result, there are "final judgment[s] on the merits in an earlier suit," but not as to Residential.

Second, a cause of action is "identical" for purposes of res judicata if it "involves a right arising out of the same transaction or series of connected transactions that gave rise to the claims in the first action." *Harnett v. Billman*, 800 F.2d 1308, 1314 (4th Cir. 1986). Res judicata thereby accounts for "issues that . . . could have been raised in that [first] action." *San Remo Hotel, L.P. v. City and Cty. of San Francisco, Cal.*, 545 U.S. 323, 336 n.16 (2005) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). Moreover, "[a] plaintiff's invocation of a different legal theory in the subsequent action" does not preclude application of res judicata. *Onawola v. Johns Hopkins Univ.*,

No. AMD 07–870, 2007 WL 5428683, at *1 (D. Md. Sept. 24, 2007) (citing *Harnett*, 800 F.2d at 1314); *see* Restatement (Second) of Judgments § 24(2) cmt. c (1982). The claims presented here clearly arise out of the same financial transactions, and therefore "involve right[s] arising out of the same transaction or series of connected transactions" as earlier alleged. *See id*. All of counts brought in plaintiff's second suit were first brought in the first: fraud in the inducement, lender fraud and misrepresentation, flipping a troubled loan, conspiracy and collusion, and punitive damages. Accordingly, I find that the second element is satisfied.

Finally, most of the parties in this case are in privity with the parties in the previous cases. Parties are in privity for purposes of res judicata where they are "so identified in interest . . . that [they] represent the same legal right in respect to the subject matter involved." *Martin v. Am. Bancorporation Ret. Plan*, 407 F.3d 643, 651 (4th Cir. 2005). In both suits, plaintiff named the following as defendants: BOA, Kafouros, Derewyanko, Shellpoint, Residential, Carrington, Stern & Eisenberg, and four John Does. In his second suit, he also named Moran, V Mortgage, Wilmington Trust, and J.P. Morgan. As a Stern & Eisenberg attorney, Moran's interests were "virtually represented" by Stern & Eisenberg. *See Martin v. Am. Bancorporation Ret. Plan*, 407 F.3d 643, 651 (4th Cir. 2005). Consequently, the privity requirement is met as to Moran. It is not met, however, as to V Mortgage and J.P. Morgan, who do not have the same legal rights as the other named parties.

Accordingly, I conclude that the doctrine of res judicata bars plaintiff's claims against BOA, Kafouros, Derewyanko, Shellpoint, Carrington, Stern & Eisenberg, Moran, and the four John Does.

## IV. Conclusion

For the reasons set forth above, I shall dismiss the Complaint. An Order follows.

Date: November 19, 2018                              _____/s/_____
                                                    Ellen L. Hollander
                                                    United States District Judge